# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MARLA J. MARTIN,**

        **Plaintiff,**

    **vs.**                               **Case No. 2:03-CV-867**
                                            **Magistrate Judge King**

**LICKING COUNTY COMMON
PLEAS COURT JUVENILE
DIVISION,** *et al.,*

        **Defendants.**


### MEMORANDUM and ORDER

This is an employment action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* [hereinafter "ADEA"], and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* [hereinafter "ADA"], in which Marla Martin [hereinafter "Plaintiff"] alleges that her job with the Licking County Common Pleas Court, Juvenile Division [hereinafter "Juvenile Court"], was terminated on account of her age and disabilities.   Plaintiff also asserts a claim of disability discrimination under state law.  In her complaint, Plaintiff names as defendants the Licking County Juvenile Court and Judge Robert Hoover [hereinafter "Defendant"], in his official capacity.  This Court dismissed the Juvenile Court as a party on January 20, 2004.  Doc. No. 17.  With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the remaining Defendant's motion for summary judgment, Doc. No. 27.

I.     **Background**

From 1985 through 1991, Plaintiff worked as a deputy clerk for the Juvenile Court. *Complaint,* at ¶ 4. In 1991, Judge Radebaugh became the judge of the Juvenile Court and terminated Plaintiff's employment. *Id.*, at 5. Then, in December 1996, Plaintiff was rehired as a deputy clerk by Judge Hoover [hereinafter "Defendant"] who had replaced Judge Radebaugh. *Id.,* at ¶ 7.

In 1991, Plaintiff broke her leg in four places. *Id.,* at ¶ 6. In 1994, she was diagnosed with breast cancer and underwent surgery and radiation therapy, which caused injury to her arm. *Id.* Plaintiff alleges that she has not completely recovered from these conditions. *Id.,* at ¶ 10. She also alleges that her recovery has been impeded by osteoarthritis and bursitis. *Id.*

In 1999, Plaintiff's family physician imposed a work limitation which limited her walking at work to very short distances. *Id.* Plaintiff alleges, however, that her request for this limitation was ignored. *Id.* Plaintiff also alleges that, due to a stress fracture, she requested a reserved parking space next to the courthouse. *Id.* Plaintiff alleges that this request was denied. *Id.* In April 2000, Plaintiff requested additional restrictions: (1) lifting no more than 20 pounds; (2) no reaching overhead; and (3) avoiding emotional stress to the extent possible. *Id.,* at ¶ 11. Plaintiff alleges that she specifically presented these requests to Judge Hoover, but that she received no accommodations. *Id.*

On March 22, 2002, Plaintiff received a letter from Judge Hoover telling her that it had been recommended to him that she be fired, allegedly due to poor performance and inability to work with co-workers. *Id.,* at ¶ 13. Plaintiff alleges that there was no prior indication of unsatisfactory performance. *Id.*

On March 25, 2002, Plaintiff requested, and was granted, a leave of absence from March 25,

2

2002, through April 20, 2002, due to alleged stress and anxiety caused by the death of Plaintiff's mother and exacerbated by worked related stress.[1]  *Id.,* at ¶ 14, Martin Deposition, pp. 248-49 and Exhibit 37, attached to *Defendant's Motion for Summary Judgment*.  On April 16, 2002, Defendant received a letter from a psychologist, Julia Brodie, Ph. D., recommending that Plaintiff's leave of absence be extended another five or six weeks.  Exhibit 41, attached to Martin Deposition.  In response, the Juvenile Court advised Plaintiff that this request would be treated as an application for leave under the Family and Medical Leave Act [hereinafter "FMLA"].  Exhibit 43, attached to Martin Deposition.  The Juvenile Court tentatively approved Plaintiff's request for additional leave, but also asked that Dr. Brodie provide an anticipated date of return by April 29, 2002.  *Id.*  On April 29, 2002, Dr. Brodie informed the Juvenile Court that she could not provide a definite return date before May 15, 2002.  Exhibit 44, attached to Martin Deposition.  On May 14, 2002, Dr. Brodie advised the Juvenile Court that Plaintiff could return to work on June 3, 2002.  Exhibit 46, attached to Martin Deposition.  The Juvenile Court approved this request.  Exhibit 47, attached to Martin Deposition.

On May 23, 2002, however, the Juvenile Court received another letter from Dr. Brodie stating that Plaintiff wished to extend her leave to June 14, 2002, since her disability coverage continued through that date.  Exhibit 48, attached to Martin Deposition.  In response, Defendant requested clarification from Dr. Brodie, asking whether Plaintiff would be unable to return to work before June 14, 2002, or whether Plaintiff simply wanted the extended date because leave was available.  Exhibit 49, attached to Martin Deposition.  On May 30, 2002, Dr. Brodie responded by

---

[1]Plaintiff gave Defendant a note from Dr. Eubanks approving this medical leave of absence.  Martin Deposition, pp. 248-49.  On April 5, 2002, the Juvenile Court designated Plaintiff's leave as covered by the Family and Medical Leave Act.  Martin Deposition, Exhibit 40.

3

stating that more leave would provide more time to work with Plaintiff on dealing with work related stress. Exhibit 50, attached to Martin Deposition. This letter did not indicate whether Plaintiff was capable of returning to work prior to June 14, 2002. *Id*.

After learning that Plaintiff had applied for permanent disability through the Public Employee Retirement System [hereinafter "PERS"], Defendant asked Dr. Brodie whether Plaintiff would be able to return to work, and if so, when.[2] Exhibit 51-52, attached to Martin Deposition. Defendant further indicated that Plaintiff's paid leave would end as of June 4, 2002, but that she could continue on unpaid leave through June 14, 2002 under the FMLA.[3] Exhibit 52, attached to Martin Deposition. On June 7, 2002, the Juvenile Court notified Plaintiff in writing that it anticipated her return to work on June 14, 2002. Exhibit 53, attached to Martin Deposition. The Juvenile Court also suggested that Plaintiff apply for extended leave if she wished to return to work after this date. *Id*.

On June 10, 2002, Plaintiff applied for extended leave, requesting an indefinite leave of absence. Exhibit 54, attached to Martin Deposition. On June 12, 2002, Defendant denied Plaintiff's request, explaining that Plaintiff had provided no evidence that she was incapable of performing her job, and stating that an indefinite leave of absence would place a burden on the Juvenile Court and its employees. Exhibit 55, attached to Martin Deposition.

Plaintiff did not return to work on June 14, 2002. The Juvenile Court informed Plaintiff that her failure to return to work would be considered an abandonment of her job unless she returned to work before 4:00 p.m. on June 19, 2002. Exhibit 56, attached to Martin Deposition. On June 19,

---

[2]Defendant faxed this letter prior to receiving Dr. Brodie's May 30, 2002, letter.

[3]Plaintiff's accumulated sick, vacation and FMLA leave expired on June 14, 2002. Martin Deposition, pp. 259-60.

2002, Plaintiff informed the Juvenile Court that she would return to work when she was no longer

disabled.  Exhibit G, attached to Edelbulte Affidavit, Doc. No. 34.  On June 20, 2002, after Plaintiff

had failed to return to work, Defendant terminated her employment.  Exhibit 57, attached to Martin

Deposition.

Plaintiff contends that her termination was impermissibly based on her age and alleged

disabilities.[4]  Martin Deposition, at ¶¶ 21-26.  Based on these claims,[5] Plaintiff seeks monetary

damages.


## II.        Standard for Summary Judgment

The standard for summary judgment is well established.  This standard is found in Fed. R.

Civ. P. 56, which  provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no

genuine issue as to any material fact . . . ."  In making this determination, the evidence must be

viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S.

144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is,

if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate

---

[4]Plaintiff alleges that her leg and arm problems constitute disabilities within the meaning of federal and
state law.  *Complaint,* at ¶ 18.

[5]Plaintiff originally asserted a defamation action, but voluntarily dismissed that claim.  Doc. No. 25.

if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

### III.     Disability Discrimination Claim

#### A.     Standard

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such invididual... ." 42 U.S.C. 12112(a); *see also Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir. 1996). Similarly, O.R.C. § 4112.02 prohibits an employer from discriminating against an employee because of that employee's disability. O.R.C. § 4112.02(A). An employee who believes that she has been discriminated against in her employment may present either direct evidence of discrimination, or circumstantial evidence sufficient to create an inference of discrimination. *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir. 1998); *Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 573 (1998). Plaintiff has presented no direct evidence of discrimination in this case. Thus, Plaintiff must present circumstantial evidence sufficient to create an inference of unlawful discrimination.

The evidentiary framework to be applied in an ADA case, where the plaintiff has presented circumstantial evidence in support of her claim of discrimination, is that established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See Sullivan v. River Valley School Dist.,* 197 F.3d 804,

810 (6th Cir. 1999). Under the *McDonnell Douglas/Burdine* framework, the plaintiff must carry the initial burden of setting forth a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show the following:

> (1) that she is disabled,
> (2) that she is otherwise qualified for her position, with or without reasonable accommodation,
> (3) that she suffered an adverse employment decision because of the disability,
> (4) that the employer knew or had reason to know of the plaintiff's disability, and
> (5) that the position remained open while the employer sought other applicants or that the disabled individual was replaced.

*Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 779 (6th Cir. 1998) (citing *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996)); *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d at 1047.

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *McDonnell Douglas,* 411 U.S. at 802. If the defendant carries this burden of production, the burden then shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253. At all times, however, the plaintiff retains the ultimate burden of persuasion. *Id.,* at 256.

Ohio courts apply this same evidentiary framework for claims of discrimination under O.R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n.,* 66 Ohio St.2d 192, 196 (1981). Therefore, because the essential elements of claims under Ohio law and the ADA are the same, this Court will examine Plaintiff's state and federal claims together. *See Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569; *Williams v. Emco*

*Maier Corp.,* 212 F. Supp.2d 780, 783 (S.D. Ohio 2002).

**B.      The *Prima Facie* Case**

**1.      Is Plaintiff Disabled?**

To be disabled within the meaning of the ADA, a plaintiff must establish "(1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarding as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C); *see also Sullivan,* 197 F.3d at 810; *Martin v. Barnesville Exempted Village School Dist. Bd. of Educ.,* 35 F. Supp.2d 1038, 1041 (S.D. Ohio 1999).  "Under each definition, the disability - real or perceived - must be one that substantially limits one or more major life activities."  *Id.,* at 1042. According to EEOC regulations,[6] "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to...the average person...." 29 C.F.R. § 1630.2(j).  Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

In this case, Plaintiff claims a leg problem and an arm problem that qualify as disabilities under the ADA.  Her physical impairments include a stress fracture in her toe and pain in her arm caused by surgery associated with breast cancer.  In her deposition, Plaintiff explained that these impairments limit her ability to walk and to lift.  Martin Deposition, at pp. 187-195, 367-368, 379-80.  Plaintiff's stress fracture was first documented in her medical records on September 9, 1999.

---

[6]The United States Supreme Court has cautioned that "no agency has been delegated authority to interpret the term 'disability.'" *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 479 (1999).  The EEOC has, nevertheless, issued regulations offering additional guidance with respect to this term.  However, neither party has challenged the use of these regulations as an interpretive tool in this case.

Records of Dr. Henry Rocco, 10/21/99, attached as Exhibit C to *Defendant's Motion for Summary Judgment*.  Plaintiff's medical records indicate that this stress fracture caused soreness, but that by late October 1999 it had begun to heal.  Records of Dr. Henry Rocco, 10/21/99 and 11/18/99, attached as Exhibit C to *Defendant's Motion for Summary Judgment.*  Plaintiff's records further reflect her doctor's opinion that the condition would cause discomfort for 12-16 weeks.  *Id.* Presumably, then, the condition should have resolved long before plaintiff's employment was terminated in 2002.

The EEOC regulation provides several factors for the Court to consider when determining whether a condition qualifies as a disability: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) its long term impact.  29 C.F.R. § 1630.2(j)(2).  "Temporary, non-chronic impairments of short duration, with little or no long term impact, are usually not disabilities." *Green v. Rosemont Industries, Inc.,* 5 F. Supp.2d 568, 572 (S.D. Ohio 1998) (citations omitted).  Plaintiff's medical records suggest that the stress fracture in her leg was not sufficiently severe to qualify as a disability under the ADA, and that the condition had essentially resolved long before her termination.

Furthermore, the walking limitations imposed by Plaintiff's stress fracture are not substantial enough to render the condition as a disability as it may relate to her June 2002 termination.  At no point during Plaintiff's employment did she require a cane or a walker.  Martin Deposition, p. 374; Records of Dr. Henry Rocco, 11/15/04, attached to *Response to Defendant's Motion for Summary Judgment.*  As of July 11, 2002, Plaintiff was able to ride her bicycle two to three miles a day, two or three days a week, without discomfort.  Records of Dr. Debra Heldman, 7/11/02, attached as Exhibit D to *Defendant's Motion for Summary Judgment.*  In her deposition, Plaintiff explains that

9

she generally experiences only mild discomfort, that she can do "some" walking for leisure, including shopping at the mall, and that she can walk sufficiently to go to the grocery store.  Martin Deposition, pp. 374-76.  In defining a substantial limitation on a person's ability to walk, the United States Court of Appeals for the Sixth Circuit has held that moderate difficulty or pain experienced while walking does not rise to the level of a disability.  *Penny v. UPS,* 128 F.3d 408, 414-17 (6th Cir. 1997).  In addition, having to walk slowly, limping, having difficulty climbing stairs, and being able to walk at only half the normal speed does not constitute a disability.  *Id.*  Consequently, the walking limitations imposed by Plaintiff's stress fracture fails to amount to a protected disability as a matter of law.

Furthermore, Plaintiff's arm problem does not qualify as a disability.  Plaintiff's own EEOC charge identifies her disability as related only to "complications from a broken leg."  Plaintiff is now precluded from claiming in this action that her arm problems comprise a disability under the ADA.  *See Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir. 1992) (because the plaintiff did not raise certain claims in the administrative process, he could not pursue them in the district court action); *Nasser v. City of Columbus,* 92 Fed. Appx. 261, 263 (6th Cir. 2004).

## 2.       Is Plaintiff Qualified for the Job?

In order to establish a *prima facie* case of employment discrimination under the ADA, Plaintiff must also show that she is qualified for the job, and that she can perform the job's essential functions, with or without a reasonable accommodation.  One of the essential functions of Plaintiff's job is to be physically present at the job site to perform the work of a deputy clerk.  *See* Deputy Clerk Job Description, attached as Exhibit 7 to Martin Deposition.  "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual

protected by the ADA." *Gantt,* 143 F.3d at 1047 (citing *Tyndall v. National Educ. Ctrs. Inc.,* 31 F.3d 209, 213 (4th Cir. 1994)); *Carr v. Reno,* 23 F.3d 525, 529 (D.C. Cir. 1994) ( "coming to work regularly" is an "essential function."). In this case, Plaintiff was absent from work for more than 12 weeks, exhausting all of her sick leave, vacation leave and FMLA leave. Plaintiff was terminated when she failed to return to work after this 12 week absence. Plaintiff argues that Defendant should have approved her request for an indefinite leave of absence as a reasonable accommodation. While a medical leave of absence can constitute a reasonable accommodation for a disability,[7] the United States Court of Appeals for the Sixth Circuit has made clear that this rule is limited to finite, specific leaves of absence. *Walsh v. UPS,* 201 F.3d 718, 726-27 (6th Cir. 2000); *Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167 (6th Cir. 1996); *Waggoner v. Olin Corp.,* 169 F.3d 481, 485 (7th Cir. 1999) (the ADA does not obligate employers to tolerate erratic, unreliable attendance); *White v. Honda of Am. Mfg., Inc.,* 191 F. Supp.2d 933, 951 (S.D. Ohio, 2002) (*citing Monette v. Electronic Data Sys. Corp.,* 90 F.3d at 1187). An indefinite leave of absence, with no clear prospects of return to work, which is what Plaintiff requested, is an objectively unreasonable accommodation as a matter of law. *Id.*

Furthermore, it should be noted that Plaintiff's request for leave was unrelated to her alleged disabilities, *i.e.,* her arm and leg problems. Instead, Plaintiff's leave of absence was related to problems with depression and anxiety. In addition, Plaintiff failed to provide her employer with any documentation demonstrating her need for an extended leave of absence. Under these circumstances, the Court concludes that Plaintiff has failed to establish a *prima facie* case of

---

[7]*Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d at 782 (finding a genuine issue of material fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA).

disability discrimination. Failure to establish a *prima facie* case by a preponderance of the evidence mandates dismissal of the claim.  *See Morvay v. Maghielse Tool & Die Co.,* 708 F.2d 229, 233 (6th Cir.), *cert. denied,* 454 U.S. 1011 (1983).

In her complaint, Plaintiff also alleges  failure to accommodate her disabilities.  Plaintiff specifically alleges that, in 1999, Defendant failed to accommodate her leg injury by denying her access to handicapped parking and that her request, made in April 2000, that she not be required to lift or reach, was likewise denied.  In her EEOC charge, however, Plaintiff stated that her employer's earliest date of discrimination was March 22, 2002, her last day on the job.  Exhibit 58, attached to Martin Deposition.  Plaintiff's accommodation requests were made years earlier. Plaintiff is consequently barred from raising a "failure to accommodate" claim since she failed to exhaust her administrative remedies as to such a claim.  *See Jones v. Sumser Retirement Village,* 209 F.3d 851, 853-54 (6th Cir. 2000) (Plaintiff's charge identified the date of her termination as the earliest date of discrimination; she was therefore precluded from arguing an earlier failure to accommodate under the ADA for failure to exhaust administrative remedies.).

## IV.    Age Discrimination Claim

### A.    Standard

Age discrimination cases under the ADEA are analyzed under the same framework as disability discrimination cases under the ADA.  *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir. 2002).  Because Plaintiff has failed to allege any direct evidence of discrimination, Plaintiff's age discrimination claim must be analyzed under the three-step *McDonnell Douglas/Burdine* framework for proving discrimination using circumstantial evidence.  In order to prove a *prima facie* case of age discrimination, a plaintiff must show the following:

(1) that she is at least 40 years of age;
(2) that she was subject to an adverse employment action;
(3) that she was qualified for her position; and
(4) that she was replaced by a person outside the protected class

*Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 349 (6th Cir. 1997); *Grosjean v. First Energy Corp.,*

349 F.3d 332, 335 (6th Cir. 2003).  Furthermore, the fourth element may be modified to require

replacement, not by a person outside the protected class, but by merely a significantly younger

person.  *Id.*

Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the

employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."

*Burdine,* 450 U.S. at 252-53; *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. at 311

(1996); *Kline,* 128 F.3d at 342.  After the defendant has met this burden, "the plaintiff must produce

sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*

*v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994).

**B.     The *Prima Facie* Case**

For purposes of summary judgment, Defendant agrees that Plaintiff has met the first three

prongs of her *prima facie* case (*i.e.,* that Plaintiff is at least 40 years of age, that Plaintiff was subject

to an adverse employment action and that Plaintiff was qualified for the position).   However,

defendant contends that plaintiff has failed to establish the fourth prong of the *prima facie* case, *i.e.*,

that Plaintiff was replaced by a person significantly younger than she.  In order to resolve this issue,

this Court must determine who replaced Plaintiff.

Following Plaintiff's termination, her duties were divided among the court's other clerks

until a permanent replacement was hired.   Plaintiff's permanent replacement, Mary Wilson

[hereinafter "Ms. Wilson"], was hired six months after Plaintiff was terminated.  Plaintiff argues that

13

she was replaced, not by Ms. Wilson, but by the clerks who initially assumed her responsibilities. However, it is not those who assume a terminated employee's responsibilities immediately after her termination who are regarded as replacements for purposes of the *prima facie* case. *Grosjean v. First Energy Corp.,* 349 F.3d at 336 (citing *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990)); *Clevidence v. Wayne Sav. Cmty. Bank,* 143 F. Supp.2d 901, 908 (S.D. Ohio 2001). (A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work."); *see also Lilley v. BTW Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.") Rather, a person is "replaced" only when another employee is hired or reassigned to permanently perform the plaintiff's duties. *Id.* (citing *Barnes v. GenCorp., Inc.,* 896 F.2d at 1465).

The evidence in this case establishes that Plaintiff's co-workers temporarily divided up and assumed her duties, in addition to their own, until Ms. Wilson was hired to permanently replace Plaintiff. Interrogatory Response No. 8; Campbell Deposition, p. 30, Doc. No. 35; Edelblute Deposition, p. 43, Doc. No. 34. Furthermore, Plaintiff's salary was not distributed among the clerks who temporarily assumed her responsibilities. Hoover Deposition, p. 118, attached to *Defendant's Motion for Summary Judgment*. Thus, for purposes of considering the *prima facie* case, the Court concludes that Plaintiff was replaced by Ms. Wilson.

At this point, the question now becomes whether Ms. Wilson, at age 51, was significantly younger than Plaintiff, who was 57 years of age when she was terminated. The United States Court of Appeals for the Sixth Circuit has held that age differences of ten or more years are generally

14

sufficient to meet the requirement of the fourth prong of the age discrimination *prima facie* case. *Grosjean v. First Energy Corp.,* 349 F.3d at 336.  On the other hand, the majority of cases have held that age differences of less than ten years are not sufficiently significant to satisfy the fourth prong of the age discrimination *prima facie* case.  *Id..,* at 338.  Furthermore, the Sixth Circuit has created a bright line rule that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant."  *Id.,* at 340.  Because Plaintiff was not more than six years older than her replacement and because she presents no direct evidence of age discrimination on the part of the Defendant, Plaintiff has failed to make a *prima facie* case.  Her age discrimination claim must therefore fail.[8]

        **WHEREUPON** Defendant's motion for summary judgment, Doc. No. 27, is **GRANTED.** The Clerk shall enter **FINAL JUDGMENT** for defendant.

April 22, 2005                           *s/Norah McCann King*
                                         Norah M<sup>c</sup>Cann King
                                         United States Magistrate Judge

---

[8]Because plaintiff has failed to establish a *prima facie* case of discrimination, the Court need not consider the remaining steps of the *McDonnell Douglas/Burdine* analysis.